UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

NEFETERI GREEN,

                  Plaintiff,

       -against-

FIRST LIBERTY INSURANCE CORP.,

                  Defendant.
---------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-6975 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Before the court is Defendant's motion to dismiss Plaintiff's complaint for failure to state

a claim. (Def. Mot. to Dismiss (Dkt. 8); Def. Mem. in Supp. of Mot. to Dismiss ("Def. Mem.")

(Dkt. 8-1).) The motion is meritless and is therefore DENIED.

## I.    BACKGROUND

    This case arises from an ordinary traffic accident with an international twist. While

driving in Manhattan, Plaintiff's car was struck by a Jeep driven by one Marco Suazo, who is not

a party to this case. (Compl. (Dkt. 1) ¶¶ 1, 11.) Plaintiff alleges that Suazo was driving

negligently and that this negligence caused the accident. (Id. ¶ 12.) The twist is that the Jeep

was owned or leased by the Principality of Monaco and registered to Isabelle F. Picco, Monaco's

permanent representative to the United Nations. (Id. ¶¶ 3, 6-7.) Suazo was also connected to the

Monégasque mission to the United Nations, either as an employee of the mission, as Plaintiff

alleges (id. ¶ 6), or as Picco's husband, as Defendant avers (Def. Mem. at 2).

    Rather than bringing a state-law negligence action directly against either Picco or Suazo

(whom Plaintiff presumably believes to be shielded from suit by diplomatic immunity (see

Compl. ¶ 2)), Plaintiff filed suit directly against Defendant—which had issued a liability

insurance policy for the Jeep (id. ¶ 7)—under Section 7 of the Diplomatic Relations Act of 1978,

Pub. L. 95-393, 92 Stat. 808, codified at 28 U.S.C. § 1364. As the court explains below, that provision authorizes an individual harmed by certain diplomatic personnel to sue the personnel's liability insurer directly.

Defendant now moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that, for various reasons, Plaintiff cannot maintain a direct action against it without first obtaining a judgment against Picco or Suazo.

## II.    LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's complaint. Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (per curiam). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, the court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Id.; ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

## III.   DISCUSSION

The court begins with some background on the Diplomatic Relations Act, then explains why Plaintiff may bring a direct action under Section 7 of the Act, and finally considers and rejects Defendant's baseless arguments to the contrary.

### A.  Diplomatic Immunity and the Diplomatic Relations Act's Direct Action

Under the common law, a tort victim had no right of action against a tortfeasor's liability insurer, because the two were not in privity of contract. Lang v. Hanover Ins. Co., 820 N.E.2d 855, 857 (N.Y. 2004); 7A Steven Plitt et al., Couch on Insurance § 104:2 (3d ed. updated 2017). Consistent with this common-law rule, most states prohibit a party injured in a traffic accident

2

from bringing suit solely and directly against the alleged tortfeasor's liability insurer. See 13F Charles A. Wright et al., Federal Practice and Procedure § 3629, at 186 n.4 (3d ed. 2009). Some states—among them New York—have softened this prohibition on direct actions by permitting a tort victim to sue the alleged tortfeasor's liability insurer, provided that, among other things, the victim first obtains a judgment against the tortfeasor. N.Y. Ins. Law § 3420; see also, e.g., Md. Code., Ins. § 19-102(b)(2); Va. Code § 38.2-2200(2).

These rules had unfortunate consequences for Americans injured in domestic traffic accidents with foreign diplomats. After such accidents, these victims were often left without legal recourse. As a diplomat, the actual tortfeasor could claim immunity from suit. See Windsor v. State Farm Ins. Co., 509 F. Supp. 342, 344 (D.D.C. 1981); Diplomatic Privileges and Immunities: Hearings Before the Subcomm. on Int'l Operations of the House Comm. on Int'l Relations, 95th Cong, 1st Sess., at 3, 5-6 (1977) (hereinafter Diplomatic Privileges Hearings) (statement of Rep. Fisher). Even if the plaintiff could bring a direct action against the diplomat's liability insurer, the insurer could escape liability by asserting the insured's diplomatic immunity as a defense to the suit. S. Rep. 95-1108, at 3 (1978) (statement of Sen. Mathias).

Partly to address "the inequities associated with the immunity of members of diplomatic missions in civil court proceedings," Congress enacted the Diplomatic Relations Act, which substantially revised the law of diplomatic immunity. Rodriguez v. Hanover Ins. Co., No. 14-CV-1478 (GJH), 2014 WL 3405258, at *3 (D. Md. July 9, 2014) (internal quotation marks and citation omitted); see also Windsor, 509 F. Supp. at 343; S. Rep. No. 95-958, at 1 (1978). Three provisions of the Diplomatic Relations Act are relevant to this lawsuit. See Rodriguez, 2014 WL 3405258, at *3. The first, Section 5 (codified at 22 U.S.C. § 254d), "continues the long-standing concept of diplomatic immunity by providing for the dismissal of any action or proceedings

brought against an individual entitled to such protection" under the Vienna Convention on Diplomatic Relations of April 18, 1961, 23 U.S.T. 3227 (entered into force with respect to the U.S. Dec. 13, 1972), the Diplomatic Relations Act itself, or any other laws extending diplomatic immunity or privileges. Windsor, 509 F. Supp. at 344. The second, Section 6 (codified at 22 U.S.C. § 254e), requires diplomatic missions in the United States, members of those missions, and members' families to maintain adequate liability insurance against the risks of bodily injury, death, and property damage arising from their use of motor vehicles, vessels, or aircraft in the United States. See generally 22 C.F.R. §§ 151.11-151.11 (implementing this provision). The third, Section 7 (codified at 28 U.S.C. § 1364), provides that someone injured by certain diplomatic personnel—namely, a member of a diplomatic mission, a senior United Nations official, or a family member of either—can sue the alleged tortfeasor's liability insurer directly in federal court, and that such a suit is tried without a jury and is not subject to the defense that the insured is protected by diplomatic immunity. By requiring individuals who are likely to be entitled to diplomatic immunity to maintain liability insurance and permitting tort victims to bring direct actions against those individuals' insurers, Sections 6 and 7 of the Diplomatic Relations Act provide an effective remedy for Americans injured by foreign diplomatic personnel. Windsor, 509 F. Supp. at 345.

## B. Plaintiff's Direct Action

Subsection 7(a) of the Diplomatic Relations Act provides that federal courts may hear tort suits brought directly against the insurers of certain diplomatic personnel and their families. In full, this subsection reads as follows:

> The district courts shall have original and exclusive jurisdiction, without regard to the amount in controversy, of any civil action commenced by any person against an insurer who by contract has insured an individual, who is, or was at the time of the tortious act or omission, a member of a mission (within the meaning of section 2(3) of the Diplomatic Relations Act (22 U.S.C. [§] 254a(3))) or a member of the family of such a member of a mission, or an individual described in section 19 of the Convention on Privileges and Immunities of the United Nations of February 13, 1946, against liability for personal injury, death, or damage to property.

28 U.S.C. § 1364(a).

Plaintiff's allegations easily satisfy Section 7. Plaintiff alleges that Defendant insured the Jeep that crashed into her car (Compl. ¶¶ 2, 6-7), and Defendant concedes not only that it insured the Jeep, but also that it therefore insured the party or parties allegedly responsible for the accident (Answer (Dkt. 6); Def. Mem. at 1). As the head of Monaco's mission to the United Nations, Picco was a "member" of that mission for purposes of the Diplomatic Relations Act. See 22 U.S.C. § 254a(1)(A). Furthermore, Plaintiff's allegation that Suazo worked for the mission (Compl. ¶ 6) is sufficient, at least at this stage of the litigation, to allege that he was a "member" of the mission under the Diplomatic Relations Act, which defines that term to include not only the mission's diplomatic staff, but also its administrative, technical, and service staff. 22 U.S.C. § 254a(1)(A)-(C); see Rodriguez, 2014 WL 3405258, at *3.[1] Defendant thus wisely concedes that "the alleged tortfeasors"—presumably both Picco and Suazo[2]—"fall within the definitions set forth in 28 U.S.C. § 254a." (Def. Mem. at 11.)

---

[1] Defendant avers that Suazo was not a mission employee and that he was driving the Jeep for personal reasons at the time of the accident (Def. Mem. at 2), but this is immaterial. First, on a motion to dismiss, the court must accept the Plaintiff's well-pleaded factual allegations as true. Iqbal, 556 U.S. at 678. Second, even if the court were to credit Defendant's factual contentions, Suazo would nevertheless satisfy Section 7, because he is, according to Defendant, married to Picco, and Section 7 authorizes direct actions against the liability insurers of "a member of the family of . . . a member of a [diplomatic] mission." 28 U.S.C. § 1364.

[2] In its memorandum in support of its motion to dismiss, Defendant sometimes refers to the "tortfeasor" responsible for the accident (presumably Suazo), and at other times to the alleged "tortfeasors" (presumably both Suazo and Picco). (Compare Def. Mem. at 1, 4, 11-12 (singular), with id. at 1, 9, 10-12 (plural).) This inconsistency is of no

## C. Defendant's Arguments

Defendant offers several reasons why Plaintiff supposedly cannot maintain this suit. These arguments lack merit.

### 1. Plaintiff need not obtain a judgment against Picco or Suazo before bringing a direct action against Defendant.

First, Defendant argues at some length that, under New York law, an injured party may not bring a direct action against an alleged tortfeasor's liability insurer without first obtaining a judgment against the actual tortfeasor. (Def. Mem. at 1, 3-7.) True enough. <u>See</u> N.Y. Ins. Law § 3420; <u>Lang</u>, 820 N.E.2d at 857-58. Defendant further argues, however, that "the doctrine of diplomatic immunity is not an exception to the rule barring a direct action against an insurer." (Def. Mem. at 1; <u>accord id.</u> at 7.)

This argument is confused. It may be true that, as a matter of New York law, a plaintiff cannot maintain a direct action against a tortfeasor's liability insurer simply because the tortfeasor is himself immune from suit. That is a question that the court need not and does not address here. What matters is that a plaintiff <u>can</u> bring a direct action under Section 7 of the Diplomatic Relations Act without first obtaining a judgment against the actual tortfeasor. <u>See</u> <u>Rodriguez</u>, 2014 WL 3405258, at *2-3.

This conclusion follows from the text and evident purpose of Section 7. As to the first, Section 7 plainly authorizes individuals harmed by certain diplomatic personnel to proceed directly against the personnel's liability insurers. Nothing in the text suggests any requirement that the victim first obtain a judgment against the actual tortfeasor. Indeed, such a requirement would render nugatory Section 7, and with it the Diplomatic Relations Act's remedial scheme for

---

moment because both Picco and Suazo are covered individuals for purposes of Section 7 of the Diplomatic Relations Act.

tort victims. In cases described by Section 7, the actual tortfeasor will generally be immune from suit, see 22 U.S.C. § 254d, making it impossible for a plaintiff to obtain a judgment against him or her before proceeding against the insurer. The court will not adopt such a construction of the statute. See United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011).

It is true that, in enacting Section 7, Congress appears to have contemplated that the substantive law applicable in these direct actions against insurers would be the tort law of the state in which the allegedly tortious act or omission occurred. S. Rep. 95-1108, at 5. It would make no sense, however, for federal courts to incorporate into Section 7, which expressly creates a direct action against insurers in certain cases, state-law limitations on the availability of direct actions. Indeed, the legislative history for the Diplomatic Relations Act shows that, in drafting the Act, Congress deleted draft language providing that Section 7 actions "shall be subject to the law of the place where the act or omission occurred" precisely to avoid giving rise to "the erroneous interpretation that a federal direct cause of action against insurers of diplomats is available only in those jurisdictions where state law creates a direct cause of action against insurers generally." Id. at 7.

Accordingly, Plaintiff need not obtain a judgment against Picco or Suazo before bringing a direct action against Defendant under Section 7 of the Diplomatic Relations Act.

### 2. The Foreign Sovereign Immunities Act does not alter Picco's or Suazo's diplomatic immunity.

Second, Defendant argues that a direct action is unavailable under Section 7 because Plaintiff could have sued Picco and Suazo directly. (Def. Mem. at 1, 8-9, 10-12.) The crux of Defendant's argument is that the tortious-activity exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(5), allows diplomatic personnel to be held liable for traffic-accident torts. (Def. Mem. at 8.)

This argument is frivolous. The FSIA addresses the immunity of foreign <u>states</u>, not foreign <u>diplomats</u> and their family members. <u>See</u> 28 U.S.C. § 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States . . . ."). As the Supreme Court has observed, "Congress did not intend the FSIA to address position-based individual immunities such as diplomatic and consular immunity." <u>Samantar v. Yousuf</u>, 560 U.S. 305, 319 n.12 (2010). Defendant's argument that the FSIA's tortious-activity exception has any bearing on Picco's or Suazo's entitlement to diplomatic immunity is refuted by the clear text of the exception, which provides that "[a] <u>foreign state</u> shall not be immune" in a case "in which money damages are sought <u>against a foreign state</u>" for certain torts "caused by the tortious act or omission of <u>that foreign state</u> or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5) (emphasis added); <u>see also</u> <u>Swarna v. Al-Awadi</u>, 622 F.3d 123, 144 (2d Cir. 2010) ("The tortious[-]activity exception permits courts to exercise jurisdiction over <u>foreign sovereigns</u> . . . ." (emphasis added)).[3] Because Picco and Suazo are not "[a] foreign state," the tortious-activity exception does not alter their entitlement to diplomatic immunity. If that were not reason enough to reject Defendant's argument, the court would also note that the legislative history of the FSIA states that because "the [FSIA] deals only with the immunity of foreign states and not its diplomatic or consular representatives, [§] 1605(a)(5) [does] not govern suits against diplomatic or consular representatives but only suits against the foreign state." H.R. Rep. 94-1487, at 21. Although Article 31 of the Vienna Convention creates certain exceptions to diplomatic immunity, it does

---

[3] For this reason, Defendant's concern that Plaintiff may obtain a double recovery from both it and from "the alleged tortfeasors," whom Plaintiff has sued in state court, is misdirected. (Def. Reply Affirmation (Dkt. 8-3) at 3 (citing <u>Green v. Suazo</u>, No. 500543/2018 (N.Y. Sup. Ct.).) If Picco and Suazo are indeed entitled to diplomatic immunity, they may assert that immunity in state court. <u>See</u> 22 U.S.C. § 254d.

not retract diplomatic immunity with respect to tort suits. Indeed, if there were a tortious-activity exception to diplomatic immunity, Congress would not have needed to enact Sections 6 and 7 of the Diplomatic Relations Act in the first place.

Defendant cites two cases in support of its baffling argument that "diplomatic immunity is inapplicable to personal injury actions arising from traffic accidents": Foxworth v. Permanent Mission of the Republic of Uganda, 796 F. Supp. 761 (S.D.N.Y. 1992), and Beato v. Pakistan Embassy, 754 N.Y.S.2d 633 (App. Div. 2003). (Def. Mem. at 9.) Unsurprisingly, neither case supports Defendant's position. In each, the court held or stated in dicta that a tort victim could sue a diplomatic mission or embassy. Foxworth, 796 F. Supp. at 762, 764; Beato, 754 N.Y.S.2d at 633. These holdings make sense under the FSIA, because a country's United Nations mission "is indisputably the embodiment of that state," USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia, 681 F.3d 103, 108 (2d Cir. 2012) (internal quotation marks and citation omitted), and is thus not immune from tort suits described in 28 U.S.C. § 1605(a)(5). Neither Foxworth nor Beato addressed diplomatic immunity, nor did Foxworth uphold a default judgment "against a Permanent Representative to the United Nations," as Defendant mistakenly asserts. (Def. Mem. at 8.)

Finally, to the extent Defendant suggests that New York State courts in particular do not recognize diplomatic immunity in traffic-accident tort suits (Def. Mem. at 1, 9), Defendant is plainly wrong. Federal courts have exclusive jurisdiction over civil suits against "members of a mission or members of their families," so suits against these individuals should not be in state court at all. 28 U.S.C. § 1351(2); MHM Sponsors Co. v. Permanent Mission of Pakistan to the United Nations, 672 F. Supp. 752, 754 (S.D.N.Y. 1987). Defendant cites no authority that actually supports its position. To the contrary, the New York Court of Appeals has

acknowledged that "a diplomat who drives a vehicle negligently is immune from suit" under federal law. <u>Tikhonova v. Ford Motor Co.</u>, 830 N.E.2d 1127, 1128 (N.Y. 2005) (citing 22 U.S.C. § 254d).

        3. <u>Plaintiff need not demonstrate that she cannot recover from Monaco before bringing a direct action against Defendant.</u>

        Charitably construed, Defendant's motion papers might be read as making the somewhat less implausible argument that a direct action under Section 7 of the Diplomatic Relations Act should be available only where a plaintiff cannot recover directly from the foreign state under the FSIA's tortious activity exception. (Def. Mem. at 12; Def. Reply Affirmation (Dkt. 8-3) at 4-5.) In support of this apparent contention, Defendant cites a committee report stating that Section 7 would "mak[e] it possible to bring actions directly against an insurer where the person is entitled to diplomatic immunity, and the situation conceivably may not be one falling within the coverage of the provisions of section 1605 of title 28 concerning jurisdiction over the state itself." H.R. Rep. 95-1410, at 3 (1978); <u>see also</u> <u>id.</u> at 2 ("This bill . . . would make possible actions resulting from incidents occurring when diplomatic personnel are not acting within the scope of their employment but are still entitled to immunity.").

        This argument suffers from at least two fatal defects. First, the Diplomatic Relations Act itself says nothing to the effect that a plaintiff may bring a direct action under Section 7 only when he or she cannot sue the tortfeasor's home country. Nor do absurd results follow from declining to read such a restriction into the Act. Congress could have reasonably decided that it would be better if Americans injured by foreign diplomatic personnel sued those diplomats' liability insurers rather than their home countries, insofar as suits against foreign countries both could create international frictions and might not offer tort victims an effective remedy, in light of the risk that foreign states would not honor adverse judgments. Because the text and structure

of the Diplomatic Relations Act reveal no ambiguity as to whether an American injured by a foreign diplomat must sue the diplomat's home country before bringing a direct action against the diplomat's liability insurer, the court need not resort to legislative history. See State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby, 137 S. Ct. 436, 444 (2016).

Second, even if the court were to accept the argument that a direct action under the Diplomatic Relations Act is available only with respect to torts falling outside the FSIA's tortious-activity exception, it would not help Defendant. The tortious-activity exception applies only to torts committed by foreign officials or employees within the scope of their office or employment. 28 U.S.C. § 1605(a)(5). Defendant avers, however, that, at the time of the accident, Suazo was not a mission employee and "was operating the subject motor vehicle for personal reasons." (Def. Mem. at 2.) Thus, even under Defendant's apparent theory, Plaintiff would still be entitled to pursue a direct action under the Diplomatic Relations Act because (accepting Defendant's factual contentions solely for the sake of argument) she could not proceed against Monaco under the FSIA's tortious-activity exception.

### D. Sanctions

"By presenting to the court a . . . written motion[,] . . . an attorney . . . certifies that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2); Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995) (stating the standard for imposing Rule 11 sanctions based on frivolous legal arguments). Among other problems, Defendant's memorandum in support of its motion to dismiss confuses diplomatic and sovereign immunity, misstates the holdings of several cases, and fails to cite contrary authority. By no later than fourteen days from the entry of this

11

Memorandum and Order, Defendant's counsel is directed to file a brief, not to exceed ten pages in length, showing cause why the court should not impose Rule 11 sanctions, including awarding Plaintiff reasonable legal fees incurred in responding to the motion to dismiss. Plaintiff may file a response of the same length no later than seven days after Defendant's counsel files her brief. Defendant may file a reply, not to exceed five pages in length, no later than seven days after Plaintiff files her response.

## IV. CONCLUSION

Defendant's motion to dismiss for failure to state a claim (Dkt. 8) is DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      May 7, 2018

NICHOLAS G. GARAUFIS
United States District Judge